# AFFIDAVIT

STATE OF WEST VIRGINIA

COUNTY OF RALEIGH, to-wit:

Your affiant, ATF Task Force Officer Jason Redden, being duly sworn, deposes and states as follows:

1. This Affidavit is submitted in support of a search warrant to enter the premises at 1303 F Street, Beckley, Raleigh County, West Virginia 25801 (hereinafter "TARGET LOCATION") and to search for and seize fruits, evidence, and instrumentalities of the federal offenses, including but not limited to 21 U.S.C. §§ 841(a)(1) and 846. There is probable cause to believe that items, materials, and objects described in Attachment B will be located inside the TARGET LOCATION.

## RELEVANT TRAINING AND EXPERIENCE

2. I am a certified law enforcement officer in the State of West Virginia. I am employed as a Deputy Sheriff with the Raleigh County Sheriff's Office and have been so employed since July of 2016. I am currently assigned to the Beckley/Raleigh County Drug and Violent Crime Unit. I am also assigned as a full-time task force officer for the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

3. During my employment with the Raleigh County Sheriff's Office, I have participated in many different types of criminal investigations, including but not limited to drug trafficking and distribution investigations, firearm offenses, kidnapping, robbery, homicide, sexual assault, other violent crimes, financial fraud, property crimes, child exploitation crimes, missing person cases, terroristic threat investigations, as well as matters relating to disposition and tracking of stolen property. I have also received specialized training relating to firearms offenses and drug investigations involving the trafficking of narcotics and drug trafficking organizations. In my

capacity as a Deputy, I have received training and gained experience by conducting and participating in drug investigations regularly. I have a working knowledge and experience in relation to the methods, terminology, and business practices used by traffickers of illegal controlled substances. On numerous occasions, I have used cooperating individuals and confidential informants in the course of investigating the distribution of illegal controlled substances.

4. Your affiant is familiar with United States Code; 21 U.S.C. § 841(a)(1) – possession with intent to distribute a controlled substance. It shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

5. Your affiant is familiar with United States Code; 21 U.S.C. § 846 – attempt and conspiracy. Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

## STATEMENT OF PROBABLE CAUSE

6. The United States, including the ATF and the FBI, is conducting a criminal investigation of Jermaine Antoine JOHNSON (hereinafter JOHNSON), Tilford Joe BRADLEY (hereinafter BRADLEY) and other members of their drug trafficking organization (hereinafter DTO) regarding TARGET OFFENSES within the Southern District of West Virginia (WV) in violation of federal law.

7. On June 28, 2023, BRADLEY was charged by the Raleigh County Sheriff's Office for possession of fentanyl and cocaine with the intent to deliver after a search warrant was executed at his residence of 110 Copiniti Street, Beckley, West Virginia. After the arrest BRADLEY gave

a mirandized statement during that investigation, during which he identified JOHNSON as his source of fentanyl and methamphetamine.

8. On April 4, 2024, the Honorable Thomas E. Johnston, Chief United States District Court Judge in the Southern District of West Virginia, entered orders authorizing the interception of wire and electronic communications over TARGET Telephone #1, a telephone used by BRADLEY; and wire communications over TARGET TELEPHONE#2, a telephone used by Heather DUNBAR, a member of the DTO, for thirty days.

9. Based on wire intercepts from TARGET TELEPHONE #1, it is clear that JOHNSON, using telephone number (304) 578-4473, which would later become TARGET TELEPHONE #4 as explained later in this affidavit, engages in conversation related to drug trafficking. As discussed below, JOHNSON, using TARGET TELPHONE #4 has been intercepted over TARGET TELEPHONE #1. For instance, on April 6, 2024, at 8:10 PM, JOHNSON, on TARGET TELEPHONE #4 (Session 00715), placed an outgoing call to BRADLEY on TARGET TELEPHONE#1. The following was discussed:

JOHNSON: Hey hey hey, you know I got them things about to touch though.

BRADLEY: Okay yea.

JOHNSON: Can you help me move them?

BRADLEY: When they get here tell me and I, I'll talk to the people that we talk, yup. I'll talk to know what I'm saying?

JOHNSON: Right.

BRADLEY: And uh, I'm coming.

JOHNSON: They be here in about an hour.

BRADLEY: What, what, what you letting them go for?

JOHNSON: Thirty.

BRADLEY: Alright, bet.

10. Based on my training, experience and the investigation thus far, JOHNSON told BRADLEY that he had a quantity of drugs that was about to arrive ("Hey hey hey, you know I got them things about to touch though") and asked BRADLEY if BRADLEY could help him sell them ("Can you help me move them?"). BRADLEY advised JOHNSON that when the drugs arrived, he would contact people he talks to in order to help sell the drugs ("When they get here tell me and I, I'll talk to the people that we talk, yup. I'll talk to, know what I'm saying?"). JOHNSON told BRADLEY the drugs would be there in about an hour ("They be here in about an hour"). BRADLEY then asked JOHNSON how much he was selling them for ("What, what, what you letting them go for?"), to which JOHNSON replied ("Thirty").

11. Between April 13 and 14, 2024, the following text message exchange between BRADLEY, on TARGET TELEPHONE #1, and JOHNSON on TARGET TELEPHONE #4, occurred:

> JOHNSON: (4/13/24 9:16 PM Session 03820)   You got money now
>
> JOHNSON: (4/13/24 11:35 PM Session 03875) What you got now
>
> JOHNSON: (4/14/24 5:08 PM Session 04271) Call me
>
> JOHNSON: (4/14/24 6:28 PM Session 04388) Come on bro don't be on bs
>
> JOHNSON: 4/14/24 8:23 PM Session 04433) I don't I just want to communicate bro
>
> JOHNSON: Communication is everything

12. On April 14, 2024, at 8:46 PM, BRADLEY, on TARGET TELPEPHONE #1 (session 04444), placed an outgoing call to JOHNSON on TARGET TELEPHONE #4. The following was discussed:

> JOHNSON: Hey you know, I appreciate you, I thought something happened.
>
> BRADLEY: Naw, aint nothing happening man, just give me one more day, give me one more day.
>
> JOHNSON: Naw, naw, naw it ain't that bro, it ain't that, it's just, it's just you know, talk to me, make sure you alright, I might need a ride or something, you know what I'm saying?
>
> BRADLEY: I got you, I got you.
>
> JOHNSON: Shit like that, you know what I'm saying, we deeper than the money bro, that shit ain't.
>
> BRADLEY: I'm so I'm so stressed out right now.
>
> JOHNSON: I might need a ride or something or my girl might need a ride to work, something might be happening that I might need you at the time.
>
> BRADLEY: Well, they took my license from me, know what I'm saying?
>
> JOHNSON: But still, you still mobile right?
>
> BRADLEY: I still make a way though even if get someone else, I got you bro.
>
> JOHNSON: It ain't about that all the time, of course I need the money but.
>
> BRADLEY: Man I appreciate that, you right, you right, you know what I'm saying.
>
> JOHNSON: Communication my nigga that's it.

13. Based on training, experience and the investigation thus far, BRADLEY asked JOHNSON to give him another day to pay him back ("Naw, ain't nothing happening man, just give me one more day, give me one more day."). JOHNSON replied that it wasn't about that and he just wanted to keep in touch with BRADLEY ("Naw, naw, naw it ain't that bro, it ain't that, it's just, it's just you know, talk to me, make sure you alright, I might need a ride or something, you know what I'm saying?") and their friendship goes deeper than the money BRADLEY owes him ("Shit like that, you know what I'm sayin, we deeper than the money bro, that shit ain't."). JOHNSON indicated that he might need a ride someday ("I might need a ride or something or my girl might need a ride to work, something might be happening that I might need you at the time"). BRADLEY responded indicating that he would get JOHNSON his money even if he had to get it from someone else ("I still make a way though even if I got to get someone else, I got you bro") to which JOHNSON replied that it wasn't always about the money, even though he does need it ("It ain't about that all the time, of course I need the money but."). Investigators believe that this conversation is in reference to money owed to JOHNSON for drugs that BRADLEY obtained based pursuant to previously described calls with JOHNSON.

14. On May 6, 2024, the Honorable Thomas E. Johnston, Chief United States District Judge in the Southern District of West Virginia, entered an order authorizing the interception of wire and electronic communications over TARGET Telephone #4, the same telephone used by JOHNSON described above, for thirty days.

15. On May 9, 2024, at 2:24 PM, an unidentified male (hereinafter UM-1), on (404) 960-9949 (session 00252), placed an outgoing call to JOHNSON on TARGET TELEPHONE# 4. The following was discussed.

JOHNSON: Yo.

UM-1: What's going on doggy?

JOHNSON: Coming to you.

UM-1: What I gonna be able to uh, grab?

JOHNSON: Huh?

UM-1: What I'm gonna be able to grab?

JOHNSON: Shit, you said you had a band?

UM-1: Yea.

JOHNSON: Yea that's the only thing [Unintelligible] in for you, the half for the band. you know I ain't had no cheese that's the uh, I got 5 Gs left of that shit.

UM-1: You didn't get none from bro?

JOHNSON: Hell no, I couldn't.

UM-1: I'm on my way to ya doggy, we gonna talk it over when I get there.

JOHNSON: Alright.

16. Based on my training, experience and the investigation thus far, I believe JOHNSON called UM-1 and said that he was coming to his location ("Coming to you."). UM-1 asked JOHNSON how much of a controlled substance he was going to be able to buy from JOHNSON ("What I'm gonna be able to grab?"). JOHNSON asked UM-1 if he had a thousand dollars ("Shit, you said you had a band ?"), and UM-1 replied yes. JOHNSON told UM-1 he only had five grams of drugs left and didn't have the money to get more right now ("Yea that's the only thing [Unintelligible] in for you, the half for the band. you know I ain't had no cheese that's the uh, I got 5 Gs left of that shit."). UM-1 asked if JOHNSON got more drugs from another individual ("You

didn't get none from bro?") to which JOHNSON replied that he didn't ("Hell no, I couldn't."). From training and experience I know that "band" is common drug slang for a thousand dollars.

17. On May 14, 2024, 6:22 PM, JOHNSON, on TARGET TELEPHONE #4, placed an outgoing call to Ryan MONROE on telephone number (304)250-8896 (session 01017). The following was discussed.

JOHNSON: Yea. Yea. B, Bro I thought that like um. I got like sixteen, seventeen. Can I hit you with the seven when the other jump?

MONROE: Yea. Yea.

JOHNSON: So that nigga owe me and shit.

MONROE: Yea.

JOHNSON: I, I tried to hit you with the seven this time, but nah. I, I just, I [breaks out] no headstone.

MONROE: Nah. I'm already hit bro.

18. Based on my training, experience, and the investigation thus far, I believe that JOHNSON told MONROE that he had sixteen or seventeen ounces of drugs left and asked MONROE if he could let MONROE know when he got more ("Yea. Yea. B, Bro I thought that like um. I got like sixteen, seventeen. Can I hit you with the seven when the other jump?"), to which MONROE agreed ("Yea. Yea."). JOHNSON indicated that his supplier owed him something ("So that nigga owe me and shit.") and told MONROE that he was going to get him seven ounces of drugs this time but couldn't ("I, I tried to hit you with the seven this time, but nah. I, I just, I [breaks out] no headstone.[1]"). MONROE replied that he already had some drugs

---

[1] NOTE: Other intercepted communications have indicated that a family member of JOHNSON's recently died and JOHNSON was trying to pay for a headstone.

("Nah. I'm already hit bro."). From training and experience I believe that when JOHNSON refers to "cheese" he is referring to a slang term for US currency.

19. On May 14, 2024 at 7:08 PM, MONROE, on telephone number 304-250-8897 (Session 01116), placed an outgoing call to JOHNSON on TARGET TELPEHONE #4. The following was discussed:

JOHNSON: Hello?

MONROE: Yo. Where you at? The spot?

JOHNSON: I'm about to be. I'm right here on, I'm right here, yea.

MONROE: Alright, I'm about to pull-up. I'm over by the Corner Shop.

JOHNSON: Alright bet. I be there before you.

MONROE: Alright

20. Based on my training, experience and the investigation thus far, I believe that MONROE asked JOHNSON where he was and if he was at home ("Yo. Where you at? The spot?"). JOHNSON replied that he was about to be ("I'm about to be. I'm right here on, I'm right here, yea."). MONROE told JOHNSON he was about to pull up at his house, that he was near the Corner Shop ("Alright, I'm about to pull-up. I'm over by the Corner Shop."). JOHNSON replied that he would be there before MONROE ("Alright bet. I be there before you.").

21. Law enforcement conducting surveillance on May 14, 2024, made the following observations: At approximately 7:12 PM, JOHNSON arrived at his residence at 1303 F Street. At approximately 7:13 PM, MONROE arrived at JOHNSON's residence.

22. The TARGET LOCATION is the home residence of JOHNSON who has been under surveillance by law enforcement for approximately 15 days. Law enforcement has observed JOHNSON at the residence daily. The previously mentioned intercepted communications are just

a few that show that JOHNSON has been supplying large quantities of illegal narcotics to other individuals and using the TARGET LOCATION as the centralized hub of his drug trafficking. There are even more instances not listed of JOHNSON's drug trafficking from the residence. Law enforcement believes JOHNSON is continuing to keep illegal narcotics and other evidence of drug trafficking contained within the TARGET LOCATION.

## CONCLUSION

23. Based on the facts set forth above, your affiant believes probable cause exists that Jermaine Antoine JOHNSON has committed and continues to commit federal offenses, including but not limited to 21 U.S.C. §§ 841(a)(1) and 846. Your affiant believes that probable cause exists for a search warrant to enter the premises at 1303 F Street, Beckley, Raleigh County, West Virginia 25801 (TARGET LOCATION) to search for and seize fruits, evidence, and instrumentalities of the specified federal offenses. Your affiant further believes there is probable cause to believe that at the time of the execution of the search warrant, there will be the items, materials, and objects described in Attachment B inside the TARGET LOCATION.

24. Accordingly, your affiant respectfully requests that the Court issue: an Order granting authority to enter and search the TARGET LOCATION and an Order sealing the Search Warrant Application, Affidavit, and Search Warrant until further Order of this Court.

Further your affiant saith naught.

Respectfully submitted,

Jason Redden, ATF Task Force Officer

SUBSCRIBED AND SWORN before me by telephonic means this <u>28th</u> day of May 2024.



Omar J. Aboulhosn
United States Magistrate Judge